UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON


JOHN THOMAS MONTGOMERY, III,

      Movant,

v.                                    Case No. 2:02-cr-00043-1
                                      Case No. 2:01-cr-00204-1*[1]
                                      Case No. 2:04-cv-01139

UNITED STATES OF AMERICA,

      Respondent.


PROPOSED FINDINGS AND RECOMMENDATION

    Pending before the court are Movant's Motion to Vacate, Set Aside and Correct Sentence, filed pursuant to 28 U.S.C. § 2255, on October 21, 2004 (docket sheet document # 58*), which is supported by an attached Memorandum and affidavit, and his "Motion to Amend § 2255 Motion" (# 65*), filed on January 24, 2005.

    Movant, John Thomas Montgomery, III (hereinafter referred to as "Defendant"), was originally sentenced to serve 325 months in prison, to be followed by a five year term of supervised release, upon his guilty plea to distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Judgment in a Criminal Case, # 10,

---

[1] Defendant was originally charged in Case No. 2:01-cr-00204-1 by information (# 20). That case was dismissed with prejudice (# 52). Defendant was indicted, pled guilty, and was sentenced in Case No. 2:02-cr-00043. Citations to documents in the 2001 case are indicated with an asterisk (*). Because Defendant listed only Case No. 2:01-cr-00204 on his § 2255 motion, it was docketed in that case; however, it should have been docketed in Case No. 2:02-cr-00043. The court has directed the Clerk to docket the § 2255 motion and subsequent documents in Case No. 2:02-cr-00043-1.

entered August 6, 2002.)  The District Court also imposed a special assessment of $100.00, and a fine of $5,000.  <u>Id.</u>  Defendant's direct appeal was unsuccessful.  <u>United States v. Montgomery</u>, No. 02-4661, 69 Fed. Appx. 132 (4th Cir. June 20, 2003), <u>cert. denied</u>, 124 S. Ct. 2861 (June 14, 2004).  Defendant's sentence was reduced to 165 months on October 1, 2003, upon the government's Motion to Reduce Sentence pursuant to Rule 35.  (Amended Judgment, # 47.)

## Grounds for Relief

Defendant raises the following grounds for relief in his Motion and attached Memorandum, with amendments from his Motion to Amend shown in italics:

A.  Ground one: Ineffective Assistance of Counsel.
1.  Petitioner's counsel was ineffective due to the fact that counsel of record failed to raise the Speedy Trial Act before Petitioner plead or during Petitioner's sentencing hearing.
2.  Counsel failed to conduct appropriate investigations, both factual and legal, to determine whether matters of defense could be developed respecting sentencing.
3.  Counsel failed to object to, and challenge alleged relevant conduct and also the two (2) point enhancement for Petitioner's role in the offense.
4.  Counsel failed to object to, and challenge Petitioner's two (2) enhancement for the firearm.

*Amended portion of Ground One: Trial counsel was ineffective for his failure to object to the violation of the Speedy Trial Act, and, appellate counsel was ineffective for his failure to raise the violation on direct appeal.*

B.  Ground two: Two (2) point enhancement for possession of a firearm.  The Court committed an error at sentencing

2

when it enhanced Petitioner's sentence beyond [that]
prescribed by the guidelines and without being proven
beyond a reasonable doubt [citing <u>Blakely v. Washington</u>,
542 U.S. 296 (2004)].   For inexplicable reasons, the
Petitioner's trial counsel withdrew objections to the
pre-sentence report.

*Amended Ground Two: Trial counsel was ineffective for his
failure to object to the two (2) level enhancement for
possession of a firearm in the course of a drug
transaction, and, appellate counsel was ineffective for
failing to raise the issue on direct appeal.*

C.    Ground three: Two (2) point enhancement for
leadership role in the offense. [The court c]ommitted an
error at sentencing when it enhanced Petitioner's
sentence beyond [that] prescribed by the guidelines and
without being proven beyond a reasonable doubt [citing
<u>Blakely v. Washington</u>, 542 U.S. 296 (2004)].   The
Petitioner's sentence was also increased by two (2)
levels for his role in the offense. * * * Here, the pre-
sentence report, which the District Court accepted
apparently without reservation, did not even imply the
Petitioner "led" a criminal enterprise or "planned and
organized" the drug trafficking or "exercised . . .
control and authority over others in the conspiracy."

*Amended Ground Three: Trial counsel was ineffective for
failing to object to the two (2) level enhancement for
movant's role in the offense, and, appellate counsel was
ineffective for his failure to raise the issue on direct
appeal.*

D.    Ground four: Because the facts supporting
Petitioner's exceptional sentence were neither admitted
by Petitioner nor found by a jury, the sentence violated
his Sixth Amendment right to trial by jury.   The
Petitioner's guideline range was enhanced from Level 26
to Level 34 due to relevant conduct.

*Amended Ground Four: Trial counsel was ineffective for
his failure to object to the unproven facts which
supported movant's exceptional sentence, and, appellate
counsel was ineffective for his failure to raise the
issue on direct appeal.*

*NEW CLAIMS FOR RELIEF*

*Ground Five: Trial counsel was ineffective for his failure to secure movant's due process right to have a jury determine his guilt on each fact which was unadmitted, and, appellate counsel was ineffective for his failure to raise the violation on direct appeal.*

*Ground Six: Trial counsel was ineffective for failure to protect and/or secure movant's due process right to a fast and speedy trial, and, appellate counsel was ineffective for his failure to raise the violation on direct appeal.*

*Ground Seven: Trial counsel was ineffective for his failure to conduct a proper investigation into the fact[s] surrounding movant's case, and, the law, and, appellate counsel was ineffective for his failure to raise this violation on direct appeal.*

*Ground Eight: Trial counsel was ineffective for his failure to protect and/or secure movant's due process right to a fa[st] and speedy trial, thereby allowing movant to plead guilty to a faulty indictment, and, appellate counsel was ineffective for his failure to raise this violation on direct appeal.*

*Defendant also amends his § 2255 motion to include a citation to United States v. Booker, 543 U.S. ___ (2005) wherever he cites to Blakely.*

(Motion and Amended Motion, ## 58*, 65*.)

## Procedural History

On September 7, 2001, Defendant was arrested and a criminal complaint was filed against him, Tikisha La'Nee Poore, and Jean Marie Craigo, for a violation of 21 U.S.C. § 846, conspiracy to distribute cocaine base.  (# 1*.)  Counsel was appointed (Carl J. Roncaglione, Jr., # 14*).  Defendant waived the preliminary hearing and was detained (## 17*, 18*, 19*).

4

On September 19, 2001, the United States filed an information (# 20*), charging Defendant with possession with intent to distribute more than 5 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On September 24, 2001, the government filed a motion which recited as follows:

> 1.  On September 19, 2001, the United States filed an Information charging defendant with a federal crime.
>
> 2.  Defendant has entered into a plea agreement with the United States.
>
> 3.  Defendant seeks to waive indictment in open court and plead guilty to the Information.
>
> 4.  Pursuant to the plea agreement, defendant has agreed to waive his rights to be indicted, and the United States and defendant hereby jointly move the court to waive indictment and ask the court that this motion to waive indictment be held in abeyance until the time of the plea hearing, thus tolling the Speedy Trial clock.

((# 22*.)  Judge Haden granted the motion, set a guilty plea hearing for October 22, 2001, and excluded the Speedy Trial Act time from September 24 through October 22, 2001 (# 23*).

On October 19, 2001, defense counsel Roncaglione filed a motion to withdraw, asserting that the attorney-client relationship had been destroyed (# 24*). By Order entered October 22, 2001, the presiding District Judge, the Hon. Charles H. Haden II, granted the motion to withdraw, ordered that new counsel be sought, and continued the hearing (# 25*). Attorney David O. Schles was appointed to represent Defendant (# 27*), and the United States asked that a guilty plea hearing be scheduled (# 26*). Judge Haden

set a guilty plea hearing for November 6, 2001, and excluded the
Speedy Trial Act time from October 22 through November 6, 2001 (#
28*).

On November 6, 2001, Defendant waived his right to be charged
by indictment, and entered a guilty plea to the information (#
29*), pursuant to a plea agreement (# 30*). Sentencing was
scheduled for January 22, 2002 (# 31*). Judge Haden provisionally
accepted the guilty plea, pending preparation of the presentence
report (# 31*). On November 13, 2001, the United States filed a
motion noting that Judge Haden had rejected a plea agreement in the
case of co-defendant Tikisha Poore, and requested a hearing (#
33*). A hearing was set for November 27 (# 34*), and continued to
December 10 (# 35*). The Speedy Trial Act time from November 27
through December 10, 2001, was excluded (# 35*).

On December 11, 2001, a hearing was held concerning the plea
agreement, and Defendant requested new counsel. Judge Haden
granted Mr. Schles' motion, terminated Mr. Schles' representation,
directed the appointment of new counsel, and continued the hearing
(# 36*). The Speedy Trial Act time from December 11, 2001, through
the new hearing date was excluded (# 36*).

On December 13, 2001, attorney Barron M. Helgoe was appointed
to represent Defendant (# 37*). On December 14, 2001, Judge Haden
entered a 15-page Memorandum Opinion and Order rejecting the
proffered plea, vacating the provisional finding of guilt, and

scheduling a hearing on December 17, 2001 (# 38*).

> The Court must reject the present plea, given the
> Defendant's confusion and uncertainty with the process,
> the entry of new counsel into the case, the Government's
> demand the Court reject the plea because Defendant has
> breached it, and Defendant's assertion the Government
> backed away from an agreement capping drug quantity with
> him.

(# 38*, at 8-9.)  Judge Haden noted that the Speedy Trial Clock

"begins running again" [the day after the hearing, December 17].

Id., at 14.

On December 17, 2001, Mr. Helgoe filed a motion to withdraw

based on a conflict of interest (# 39*).  The motion was granted,

attorney Aaron B. Alexander was appointed to represent Defendant,

and the hearing was continued to January 14, 2002 (# 41*).  The

Speedy Trial Act time from December 17, 2001, through January 14,

2002 was excluded (# 41*).

Meanwhile, on December 17, 2001, the United States filed a

motion to consider effectiveness of Defendant's waiver of

indictment and to consider voiding subsequent plea agreement (#

40*).  The hearing was continued to January 22, 2002 (# 44*), and

then to January 28, 2002 (# 46*).

On January 28, 2002, a hearing took place and Judge Haden

ruled that Defendant's waiver of indictment was void.

> Given the plea agreement, which contained the waiver[,]
> has now been voided by the Court pursuant to the
> Memorandum Opinion and Order of December 14, 2001, the
> waiver itself, covered in paragraph 1 of the rejected
> agreement, necessarily is void as well.  The Court noted
> the Information yet pends.  The onus is on the United

States to move for dismissal of it pursuant to *Rule* 48,
supersede it, or proceed further under it.

(# 47*, at 1-2.)  The Speedy Trial Act time from January 14, 2002
through January 28, 2002, was excluded, and the Speedy Trial Act
clock was declared to begin "running anew today (January 29) (#
47*, at 2).

On February 4, 2002, the United States moved for another
guilty plea hearing (# 48*).  Judge Haden reviewed the proposed
plea agreement, found the language in paragraph 11 to be
objectionable, and declined to approve it (# 49*).

On February 7, 2002, a federal grand jury returned an
indictment, charging Defendant with one count of possessing with
intent to distribute more than five grams of cocaine base, in Case
No. 2:02-cr-00043-1 (# 1).  On February 14, Defendant was arraigned
and detained (# 3).  On March 28, the United States filed a motion
to schedule a guilty plea hearing, which was set for April 11, 2002
(## 4, 5).  The Speedy Trial Act time from March 28 through April
11, 2002, was excluded (# 5).  On April 11, 2002, Defendant entered
his guilty plea, pursuant to a plea agreement, and sentencing was
scheduled for July 15, 2002 (# 9).

On May 15, 2002, defense counsel moved to continue the
sentencing due to a prior commitment on July 15, and the motion was
granted, with sentencing set for August 5, 2002 (## 50*, 51*).[2]

---

[2]  Both of these documents were docketed in Case No. 2:01-cr-00204-1;
however it is not necessary to re-docket them in Case No. 2:02-cr-00043-1.

On August 5, 2002, Defendant was sentenced to 325 months, as noted above (# 10.)  On September 6, 2002, *nunc pro tunc* August 5, 2002, Case No. 2:01-cr-00204-1 was dismissed with prejudice.

On appeal, Defendant raised three issues: violation of Speedy Trial Act; two-level enhancement for possession of a dangerous weapon; and two-level enhancement for role in the offense.  United States v. Montgomery, 69 Fed. Appx. 132.

### Ineffective Assistance of Counsel

Defendant makes several assertions that he was denied effective assistance of counsel.  Accordingly, the undersigned will address the standard of review of claims of ineffective assistance of counsel at the outset.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel.  Id. The first prong is competence; Defendant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  466 U.S. at 688-89.

In order to meet the first prong, a defendant must identify the acts or omissions of counsel that are

9

alleged not to have been the result of reasonable
professional judgment. The court must then determine
whether, in light of all the circumstances, the
identified acts or omissions were outside the wide range
of professionally competent assistance. . . [C]ounsel is
strongly presumed to have rendered adequate assistance
and made all significant decisions in the exercise of
reasonable professional judgment.

460 U.S. at 690.

The second prong is prejudice; "[t]he defendant must show that
there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been
different. A reasonable probability is a probability sufficient to
undermine confidence in the outcome." 466 U.S. at 694. In the
context of a guilty plea, a defendant must show that he would not
have pled guilty but for counsel's incompetence. Hill v. Lockhart,
474 U.S. 52 (1985); Fields v. Attorney General, 956 F.2d 1290 (4th
Cir. 1989). The court may determine the prejudice prong prior to
considering the competency prong if it is easier to dispose of the
claim on the ground of lack of prejudice. Strickland, 466 U.S.
697.

### Grounds One, Six and Eight: Speedy Trial Act

Defendant contends that his rights under the Speedy Trial Act
were violated, and that this issue should have been raised in this
court and on appeal. (Motion, at 5; Memorandum, at 2.) Defendant
relies on United States v. Foye, 36 F. Supp.2d 329, 332-33 (S.D.W.
Va. 1998)(Goodwin, J.), which held that "[a]n information is a
charging paper that is properly filed within the thirty-day window

10

proscribed by the Act only if the defendant also waives his right to proceed by indictment within that time period." Defendant argues that Judge Haden committed error in excluding time in the various orders. Defendant contends that "the delays in this case resulting from the Government's repeated failures to bring plea agreements before the District Court, and once rejected, to indict the Petitioner promptly, created a violation of statutory and constitutional dimensions." (Memorandum, at 6.)

Defendant was arrested on September 7, 2001 and made his first appearance before a judicial officer on that date. On September 19, 2001, the information was filed in Case No. 2:01-cr-00204-1. On September 24, 2001 (less than thirty days after Defendant's arrest), the United States filed a motion, which stopped the Speedy Trial clock, pursuant to 18 U.S.C. § 3161(h)(1)(F)[delay resulting from any pretrial motion](16 days elapsed). On November 6, 2001, Defendant waived indictment and entered a guilty plea; the time from September 24 through November 6 was properly excluded by Judge Haden pursuant to 18 U.S.C. § 3161(h)(1)(I)[delay resulting from consideration by the court of a proposed plea agreement](## 23*, 28*).

From November 6, 2001, when Defendant entered a *conditional* guilty plea, until December 10, 2001, Judge Haden again excluded the time pursuant to § 3161(h)(1)(I) (# 35*). The time from December 11 through December 17, 2001 was excluded pursuant to §

3161(h)(1)(D) [delay resulting from trial with respect to other charges against the defendant] (# 36*). This reason appears to have been cited in error, as the order specifically states that the matter under consideration is the proposed plea agreement. The time from December 17 through January 28, 2002 was excluded pursuant to § 3161(h)(8)(A)[ends of justice served by a continuance outweigh the best interest of the public, etc.](# 41*), and § 3161(h)(8)(B)(I) and (iv)[possible miscarriage of justice](# 47*).

When the Speedy Trial clock began running again on January 29, 2002, only 16 days had elapsed. Seven days later, the grand jury returned the indictment in Case No. 2:02-cr-00043-1 against Defendant. Thus 23 days had elapsed.

The court notes that Defendant never entered a not guilty plea in Case No. 2:01-cr-00204-1; thus 18 U.S.C. § 3161(c)(1) is not implicated ("In any case *in which a plea of not guilty is entered,* the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date . . ."). [Emphasis added.]

In Case No. 2:02-cr-00043-1, the indictment was filed on February 7, 2002. On March 28, 2002, the United States filed a motion to schedule guilty plea hearing, the filing of such motion having stopped the clock, pursuant to 18 U.S.C. § 3161(h)(1)(F) (49 days elapsed). By Order entered April 4, 2002, Judge Haden excluded the time from March 28 through April 11, 2002, when

12

Defendant entered his guilty plea.

Defendant has been in federal custody since September 7, 2001. Pursuant to 18 U.S.C. § 3164(b), subject to the provisions regarding excludable time, Defendant's trial should have commenced not later than ninety days following September 7, 2001. Because of the exclusions of time as set forth above, only 72 days elapsed.

On direct appeal, the Fourth Circuit ruled that Defendant's valid guilty plea waived all nonjurisdictional defects, including an alleged deprivation of his constitutional right to a speedy trial. <u>Montgomery</u>, 69 Fed. Appx. 132.

Accordingly, the undersigned proposes that the presiding District Judge find that there was no violation of Defendant's rights under the Speedy Trial Act. Thus Defendant was not denied effective assistance of counsel either in this court or on appeal with respect to his Speedy Trial Act rights.

**Grounds One and Seven: Investigation re Sentencing**

Defendant makes a conclusory allegation that his attorney failed to conduct appropriate investigations "both factual and legal, to determine whether matters of defense could be developed respecting sentencing." This is an inadequate statement of the acts or omissions of counsel which Defendant asserts to be unreasonable professional judgment, and the undersigned will not address such a general accusation further.

### <u>Blakely</u>/<u>Booker</u> Issues:

**Grounds One, Four, Five: Relevant Conduct**
**Grounds Two, Four, Five: Firearm Enhancement**
**Grounds Three, Four, Five: Role in the Offense**

Defendant contends that his constitutional rights were violated and he was denied effective assistance of counsel because sentencing factors which increased his sentence were neither admitted by him, nor found by a jury, and his attorney failed to object. (Memorandum, at 2-11; Motion to Amend.) Defendant relies on the Supreme Court's decisions in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and <u>United States v. Booker</u>, 543 U.S. ___ (2005) for his claims.

Defendant was arrested on September 7, 2001, advised of his <u>Miranda</u> rights, and gave a statement to police. According to the presentence report ("PSR"), Defendant admitted to selling cocaine base from co-defendant Craigo's apartment (PSR, ¶ 19, at 6.)

> Mr. Montgomery admitted to making approximately two to three trips per week and purchasing from 4 to 9 ounces for resale over a four-month period during the presentence interview. However, during his interview with authorities, Mr. Montgomery stated that he had been in the area for one month and had made approximately ten trips to Columbus, Ohio, picking up 1 to 2 ounces of cocaine base per trip. The defendant also advised authorities that he used females to go with him to purchase and transport the cocaine base.

<u>Id.</u>, ¶ 21, at 7. Defendant, Poore, and Craigo gave differing statements as to the number of trips and the quantities of cocaine base transported to Charleston each time. Accordingly, the PSR used the lower estimate given by Defendant (a total of ten trips,

14

one ounce on each of eight trips, 3 ounces on one trip, and 4 ounces on one trip, for a total of 15 ounces of cocaine base). Id., ¶ 23, at 7.   Additional drug quantities were derived from controlled substances and cash which were seized when Defendant was arrested.   Id., ¶¶ 24-25, at 7.

At the guilty plea hearing on April 11, 2002, Assistant United States Attorney File advised Judge Haden that "both parties agree [] regarding the amount of drugs involved."  (Tr. Plea Hrng., # 22, at 5.)

> MR. FILE: Your Honor, it's my understanding that approximately 18 grams of crack cocaine were found in this residence during the search.  I understand that approximately 13 or 13 and a half of those grams were found in the bedroom where the defendant wa.  The other grams were found under a couch in a separate room
>
> The defendant had under his mattress in the bedroom 2,515 dollars and the defendant also had 60 dollars on his person.  In his Mirandized statement, he indicated that he had made approximately ten trips back and forth between Columbus and Charleston for the purpose of brining drugs to Charleston and on each of those trips he brought between 1 and 2 ounces.  On nine of those trips the drugs were crack cocaine, on one occasion, the drugs consisted of powder cocaine.
>
> If the calculations were to be done, it's approximately 250 grams of crack cocaine would be attributable to him as a result of the nine ounces of – that he referenced in his statement.
>
> THE COURT: All right.  Is that your understanding likewise, Mr. Alexander.
>
> MR. ALEXANDER: Yes, Your Honor.
>
> THE COURT: And yours, Mr. Montgomery?
>
> THE DEFENDANT: Yes, Your Honor.

Id., at 6-7.  No mention was made of firearms or other persons involved in the criminal conduct during the guilty plea hearing.

Defense counsel filed objections to the two-level firearm enhancement and to the characterization that Defendant used females to carry drugs from Columbus to Charleston.  (PSR, at 22-23.) These objections were withdrawn at the sentencing hearing, after defense counsel consulted with AUSA Frail and Defendant.  (Tr. Disp. Hearing, # 22, at 21.)  Judge Haden adjusted Defendant's offense level to 34 based on relevant conduct, to 36 based on Defendant's possession of a firearm, and to 38 based on his finding that Defendant was an organizer, leader, manager or supervisor of a criminal enterprise.  Id., at 21.  Defendant received a three-level reduction in offense level based on his acceptance of responsibility.  Id., at 21-22.  With a criminal history category of VI (16 points), he was exposed to a sentencing range of 292 to 365 months.  Id., at 22.

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738, which reaffirmed the Court's holding in Apprendi, applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756.  The Booker holding

16

applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)).  Defendant's case concluded direct review on June 12, 2004, and is final.  Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

Seven Circuit Courts of Appeals have ruled that Booker does not apply retroactively to cases on collateral review.  In McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ___ U.S. _____, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523.  It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment.  Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid*.  That is no less true of *Booker* -- or for that matter *Apprendi* itself.  We held in *Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral

review, because it "is concerned with the identity of the
decisionmaker, and the quantum of evidence required for
a sentence, rather than with what primary conduct is
unlawful." That, too, is equally true of *Booker*. No
conduct that was forbidden before *Booker* is permitted
today; no maximum available sentence has been reduced.

The remedial portion of *Booker* drives the point
home. The Court held that the federal Sentencing
Guidelines remain in force as written, although 18 U.S.C.
§ 3553(b)(1), which makes their application mandatory, no
longer governs. District judges must continue to follow
their approach *as guidelines*, with appellate review to
determine whether that task has been carried out
reasonably. No primary conduct has been made lawful, and
none of the many factors that affect sentences under the
Sentencing Guidelines has been declared invalid.
Consequently, *Booker*, like *Apprendi* and *Ring*, must be
treated as a procedural decision for purposes of
retroactivity analysis.

* * * The Court held in *DeStefano v. Woods*, 392
U.S. 631, and reiterated in *Summerlin*, that the choice
between judges and juries as factfinders does not make
such a fundamental difference; to the contrary, the Court
stated in *Summerlin*, it is not clear which is more
accurate. ___ U.S. at ___, 124 S. Ct. at 2525. What is
more, *Booker* does not in the end move any decision from
judge to jury, or change the burden of persuasion. The
remedial portion of *Booker* held that decisions about
sentencing facts will continue to be made by judges, on
the preponderance of the evidence, an approach that
comports with the sixth amendment so long as the
guideline system has some flexibility in application. As
a practical matter, then, petitioners' sentences would be
determined in the same way if they were sentenced today;
the only change would be the degree of flexibility judges
would enjoy in applying the guideline system. That is
not a "watershed" change that fundamentally improves the
accuracy of the criminal process. *See also Curtis*, 294
F.3d at 843-44.

We conclude, then, that *Booker* does not apply
retroactively to criminal cases that became final before
its release on January 12, 2005. That date, rather than
June 24, 2004, on which *Blakely v. Washington*, ___ U.S.
___, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down,
is the appropriate dividing line.

In <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies] retroactively to [a] collateral challenge."  In <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that <u>Booker</u>'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review."  In <u>Humphress v. United States</u>, 398 F.3d 855, 863 (6th Cir. 2005), <u>pet. for cert. filed, No. 05-5130</u>, the Sixth Circuit ruled that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*.  The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)].  We hold that *Booker*'s rule does not either.

In <u>United States v. Price</u>, 400 F.3d 844, 848 (10th Cir. 2005), <u>pet. for cert. filed, No. 04-10694</u>, the Tenth Circuit held that <u>Blakely</u> was a new rule of criminal procedure that was not subject to retroactive application on collateral review.  In <u>Lloyd v. United States</u>, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "<u>Booker</u> announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005.  In <u>Schardt v. Payne</u>, 414 F.3d 1025 (9th Cir. 2005), the Ninth Circuit held that <u>Blakely</u> did not announce a watershed rule of criminal

19

procedure, and quoted approvingly from <u>Price</u>.

Based on <u>McReynolds</u>, <u>Green</u>, <u>Varela</u>, <u>Humphress</u>, <u>Price</u>, <u>Rucker</u>, <u>Lloyd</u>, and <u>Schardt</u>, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before <u>Blakely</u> and <u>Booker</u> were decided, and that neither <u>Blakely</u> nor <u>Booker</u> applies retroactively on collateral review. Thus Defendant's grounds for relief lack merit.

The undersigned proposes that the presiding District Judge **FIND** that Defendant has failed to demonstrate that he was denied effective assistance of counsel or that his conviction and sentence are otherwise in violation of the Constitution or a Federal law.

For the foregoing reasons, it is respectfully **RECOMMENDED** that the District Court deny Movant's Motion filed pursuant to 28 U.S.C. § 2255, and his Motion to Amend as being without merit.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court,

specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, John Thomas Montgomery, and to counsel of record.

_  September 27, 2005  _
Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge